IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Jackie Williams, #231414,     ) | |
|     ) | Civil Action No. 6:08-3350-GRA-WMC |
| Petitioner,     ) | |
|     ) | **REPORT OF MAGISTRATE JUDGE** |
| vs.     ) | |
|     ) | |
| George T. Hagan, Warden of     ) | |
| Allendale Correctional Institution,     ) | |
|     ) | |
| Respondent.     ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.


## BACKGROUND OF THE CASE

The record reveals that the petitioner is presently currently pursuant to orders of commitment from the Clerk of Court for Aiken County, South Carolina. He was indicted at the January 1995 term of the Court of General Sessions of Aiken County for murder (95-GS-02-193). The indictment arose from an incident on August 31, 1993, in which Patricia Shaw Williams was murdered by means of "thermal burns due to car fire due to accelerants." On February 8, 1996, the petitioner proceeded to trial before the Honorable Luke N. Brown, Jr. He was represented by Thomas Broadwater. The jury convicted him of murder. He was sentenced to life imprisonment. No appeal was timely filed by either his counsel or the petitioner *pro se*.

### *The Initial Application for Post-Conviction Relief*

On January 29, 1997, the petitioner filed an initial application for post-conviction relief (*Williams v. State*, 97-CP-02-95). In his initial application, he alleged the following grounds for relief:

A. Denied the effective assistance of counsel on the ground that trial counsel Broadwater failed to file a timely notice of intent to appeal. App. p. 504.

B. Denied effective assistance of counsel because counsel failed to perform within the range of competent assistance and these omissions were prejudiced to his defense. App. p. 506.

    1. Counsel failed to do an adequate pretrial investigation; and failed to conduct an investigative into possible defenses and applicable law.

        a. failed to conscientiously discharge his professional responsibilities;

        b. failed to act as diligent and conscientious advocate;

        c. failed to devote himself solely to my cause;

        d. failed to serve my cause in good faith;

        e. failed to give me his complete loyalty;

        f. did not have my best interests in mind while he was supposed to be investigating and preparing case;

        g. neglected the necessary investigation and preparation of my case;

        h. did not do necessary factual investigation;

        i. did not do necessary legal research.

    2. Denial of effective assistance of counsel during pre-trial phase and trial.

        a. Ineffective assistance of counsel.

b.  Denial of due process.

c.  Violation of 5th, 6th, and 14th amend-ments to the U.S. Constitution.

d.  Suppression of evidence.

e.  Denial of pre-trial investigation.

f.  Denial of witnesses.

g.  Arrest without probable cause.

The respondents made a return on March 13, 1997. On October 14, 1997, the petitioner made a *pro se* amended application for post-conviction relief, in which he alleged the following:

9(a)  Ineffective assistance of counsel - (Counsel failed to inform Applicant of his right to appeal and failed to file a timely notice of intent to appeal or otherwise perfect an appeal in the absence of an "intelligent waiver" by the Applicant):

10(a)  At trial, the Applicant was represented by Attorney Thomas Broadwater, of Columbia, South Carolina. The Applicant and his family expressed their desire to appeal the conviction to Attorney Broadwater, and assumed that he was filing the necessary notices with the Court for an appeal to be perfected. Attorney Broadwater ensured Applicant's mother and father that he filed a notice of intent to appeal and that he was working on getting the Applicant back into court. The Applicant found out that the notice of appeal had not been filed when he did not receive any information from the S.C. Office of Appellate Defense. After the Applicant wrote several letters to the S.C. Supreme Court, the Aiken County Clerk of Court and Attorney Broadwater, the Applicant realized that his counsel had not filed for an appeal. The Applicant's counsel was obligated to perfect an appeal in this case because: (1) there are no facts appearing in the trial transcript which demonstrates that the Applicant "knowingly and intelligently" waived his right to appeal; and (2) the Applicant never filed any written requests to waive his right to appeal. In fact, the Applicant and his family, both requested that the case be appealed and was ensured (sic) that it would be taken care of by Mr.

3

Broadwater. The Applicant and his families request to have the case appealed was an "extraordinary circumstance" requiring counsel to inform the Applicant of his right to appeal, the procedures for preserving the right to appeal, and in the absence of a waiver, required counsel to perfect the appeal.

9(b)    Ineffective assistance of counsel - (Counsel failed to investigate the Applicant case or properly prepare a defense);

10(b)  Prior to Applicant's trial on February 6, 7, and 8, 1996, the Applicant's counsel, Thomas Broadwater, failed to investigate Applicant's case or even prepare or evaluate a proper defense for trial, even though the Applicant maintained his innocence. The Applicant requested that counsel interrogate Roger Corley, the victim's boyfriend, concerning his possible involvement in the victim's murder, because Mr. Corley attempted suicide shortly after victim's death, and possibly may have done so because of his involvement in the murder of his girlfriend. Furthermore, Mr. Corley was known to drive a small "green" Escort which may have been the "green" car that witnesses claim they saw parked along the side of the road with the victim's car prior to her murder. Had counsel investigated these facts, it would have demonstrated to the fact finders that a possible alternative existed other than that the Applicant was involved in the murder. These facts along with the Applicant's alibi witnesses who testified that the Applicant was at home at the time of the victim's death, would have raised a reasonable doubt in the minds of the fact finders.

9(c)    The Applicant did not knowingly and intelligently waive his statutory right to wait a minimum of twenty-four (24) hours between his conviction and his sentence as required by S.C. Code Ann. § 16-3-20, and the trial judge erred in proceeding directly from Applicant's trial to the sentencing phase;

10(c)  At the end of the Applicant's trial, the Applicant was found guilty on first degree murder, Tr. p. 493, l. 13 - p. 494, l. 5, and after removing the jury from the courtroom, Tr. p. 496, l. 8 - p. 497, l. 1, the trial judge proceeded directly from the trial conviction to the sentencing phase without waiting a minimum of twenty-four (24) hours as required by S.C. code § 16-3-20. The trial judge sentenced the Applicant as follows: "WELL,

4

GENERAL SENTENCE OF THE COURT, JACKIE L. WILLIAMS, BE CONFINED TO THE SOUTH CAROLINA DEPARTMENT OF CORRECTIONS FOR THE BALANCE YOUR NATURAL LIFE". Tr. p. 498, ll. 12-15. At no time during the trial or sentencing phase was the Applicant informed of his statutory right to wait a minimum of twenty-four (24) hours before being sentenced, nor, was Applicant asked by the trial judge or his counsel to waive his statutory right. Furthermore, the trial judge never asked Applicant's counsel, whether he wanted to waive the waiting period, but rather, only asked "Anything you'd like to say, counselor, or you, Mr. Williams, before I sentence you". Tr. p. 497, ll. 20-21. Therefore, the Applicant and his defense counsel's assent to an immediate sentencing proceeding did not constitute a waiver of the waiting period.

9(d)    Ineffective assistance of counsel - (Counsel failed to object to the trial judge's erroneous instruction to the jury concerning "malice"); and,

10(d) The Applicant was charged with First Degree Murder, which is the unlawful killing of another with malice of forethought, express or implied. During the judge's charge to the jury, Tr. p. 479, l. 20 - p. 493, l. 3, the judge erroneously informed the jury that his instructions concerning malice is to permit "the jury to define malice but it does not require the jury to find malice", Tr. p. 490, ll. 5-11. Following this erroneous instruction by the trial judge which relieved the state from proving beyond a reasonable doubt, an essential element of the crime for which Applicant was charged, the Applicant's counsel failed to object to the erroneous charge.

9(e)    Ineffective assistance of counsel - (Counsel failed to request the charge of the lesser included offense even though the evidence supported such a charge and counsel failed to object to the trial judge's erroneous and unconstitutional jury charge that the jury only has two options for their verdict, either guilty of murder or not guilty. Counsel should have objected and demanded a jury charge as mandated by State v. King, 158 S.C. 251, 155 S.E. 409 (1930).

10(e) During the trial judge's charges to the jury, the judge instructed the jury that there are only two verdicts in which they may return; either guilty of first degree

murder or not guilty. Tr. p. 485, ll. 19-22; p. 492, ll. 1-13. Trial counsel failed to request a charge as to the lesser included offense as mandated by State v. King, 158 S.C. 251, 155 S.E. 409 (1930), and failed to object to the trial judge's jury charges that lacked a charge as to the lesser included offense. The evidence at trial properly supported a charge on the lesser included offense of manslaughter and counsel was ineffective in his assistance by failing to request the charge and in failing to object to the trial judge's jury instructions that lacked the lesser included offense.

On September 24, 1997, an evidentiary hearing was held on the application. The petitioner was present and represented by his court-appointed counsel, Michael Millians of the Aiken County Bar. The respondents were represented by Matthew M. McGuire, Assistant Deputy Attorney General. Testimony was received from the petitioner and his original trial counsel, Thomas Broadwater. At the conclusion of the hearing, the Honorable Rodney A. Peeples made an oral order denying the application in its entirety. A written order was entered on January 27, 1998 denying the application.

### The PCR Appeal

The petitioner appealed the denial of state post-conviction relief to the Supreme Court of South Carolina. On appeal, he was represented by the South Carolina Office of Appellate Defense. On October 16, 1998, a petition for writ of certiorari was made alleging the following question:

Whether the PCR court erred in ruling Petitioner was not entitled to a belated appeal pursuant to *White v. State*, 263 S.C. 110, 208 S.E.2d 35 (1974)?

On August 20, 1999, the Supreme Court of South Carolina entered a letter order that the petition for writ of certiorari was denied.

6

### The 2000 Federal Habeas Corpus Action

The petitioner then made a federal habeas corpus action on January 17, 2000, filed January 26, 2000.  *Williams v. Catoe, et. al*, C.A. No. 6:00-0271-13AK.  In his *pro se* petition before this court, the petitioner made the following allegations:

    (1)     Ineffective assistance of trial counsel.

        (a)     Trial counsel failed to file a notice of appeal from conviction at trial.  Petitioner never waived his right to an appeal, and trial counsel had promised he would file an appeal but did not do so.

    (2)     Denial of due process and equal protection.

        (a)     The PCR judge's ruling was erroneous, unfair and arbitrary.

    (3)     Actually innocent.

        (a)     Petitioner is innocent of the crime of murder and was only convicted because he was denied his right guaranteed by the 6th & 14th Amendments.

On August 14, 2000, the Honorable G. Ross Anderson, Jr., now Senior United States District Judge, entered an order, upon consideration of a recommendation by this court, concluding that under the standards set forth in *Roe v. Flores Ortega*, 528 U.S. 470 (2000), "the court finds trial counsel's representation (concerning the filing of a notice of appeal) fell below an objective standard of reasonableness," that there had been no discussion about the advantages and disadvantages of filing and appeal and no real effort to discover the defendant's wishes. Additionally, prejudice was found. "Because counsel's performance was unreasonable and Petitioner has demonstrated prejudice from counsel's deficient performance, this court finds that he has made out a successful ineffective assistance of counsel claim entitling him to an appeal."  Further, it found "this court's finding that the state (PCR) court's decision was unreasonable is based on the clear testimony provided by Petitioner's counsel during the September 1997 hearing and the Petitioner's circumstances,

which includes the obvious confusion about filing a notice of appeal and the fact that he received a life sentence after a guilty verdict at trial." The court rejected additional claims presented by the petitioner and denied a request to stay and hold the matters in abeyance for re-exhaustion, instead addressing the merits and state court findings. Judge Anderson's ordered provided as follows:

> IT IS FURTHER ORDERED that Petitioner's writ of habeas corpus be GRANTED as to his first ground for relief, unless, within a reasonable period not to exceed ninety(90) days, the State of South Carolina grants the Petitioner leave to appeal from his conviction. If the State grants Petitioner leave to appeal his conviction, the State must advise Petitioner of its time requirements for filing a notice of appeal and Petitioner is responsible for filing the notice of appeal with the state court in a timely manner.

*Williams v. Catoe, et. al*, C/A No. 6:00-0271-13AK, Order of August 14, 2000, p. 9-10.

### *The Certiorari Proceeding in the Original Jurisdiction South Carolina Supreme Court - Direct Appeal Issue Reviewed*

On September 28, 2000, the respondent State of South Carolina made a motion for an extraordinary writ in the original jurisdiction of the South Carolina Supreme Court. The petitioner, through appellate counsel Daniel T. Stacey of the South Carolina Office of Appellate Defense, made a return on October 19, 2000. On November 3, 2000, the Supreme Court entered an order issuing a writ of certiorari to review any issue that could have been raised in a timely direct appeal. The petitioner made a brief of petitioner alleging the following issue:

> Whether the court erred when it overruled Appellant's motion for a directed verdict, because there was not substantial circumstantial evidence to indicate that he was the person who murdered his wife. Likewise under the *Jackson v. Virginia* standard, there was no evidence from which a rational trier of fact could find Appellant's identity as the perpetrator beyond a reasonable doubt.

On November 26, 2001, the South Carolina Supreme Court affirmed the matter on writ of certiorari pursuant to SCACR Rule 220(b)(1). *State v. Jackie L. Williams* , Memo. Op. No. 2001-MO-072 (November 26, 2001).

### The Second State PCR Proceedings

On July 29, 2002, the petitioner made an "application for post-conviction relief alternative petition for writ of habeas corpus" in Aiken County. *Williams v. State*, 02-CP-02-429. In this second application, the petitioner alleged:

(1) Ineffective trial counsel:

    (a) failed to investigate, secure experts, make proper motions, objections, etc.

(2) Ineffective PCR counsel and PCR appeal counsel.

    (b) Failed to comply with Rule 71.1(d), raise and preserve issues for and on appeal.

(3) Denied due process, equal protection, liberty and property interests.

    (c) Denied entitlements of Rule 71.1(d), fundamental fairness by State; actually innocent.

The respondent State of South Carolina made a return asserting that the application must be dismissed as successive. A hearing was convened before the Honorable Thomas Hughston on January 2, 2002. The petitioner was represented by William Sussman. Testimony was received from the petitioner, Thomas Broadwater, and Retha Williams. On March 4, 2003, Judge Hughston entered his order dated February 25, 2003, denying relief.

### The PCR Appeal before the South Carolina Supreme Court

The petitioner made an appeal from the denial to the South Carolina Supreme Court. On appeal, he was represented by Eleanor Duffy Cleary, Assistant Appellate

Defender.  On September 9, 2003, Ms. Cleary made a *Johnson* petition for writ of certiorari and request to be relieved as counsel asserting as a "question presented":

> Whether the PCR Court erred in finding defense counsel was not ineffective where petitioner demonstrated that his counsel failed to object to repeated references to alleged prior bad acts committed by the Petitioner and the erroneous admission of this evidence prejudiced him and led to his conviction for murder?

The petitioner apparently made an unserved *pro se* response.  On May 13, 2004, the South Carolina Supreme Court entered an order denying the petition and granting appellate counsel's petition to be relieved pursuant to *Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).  The remittitur was entered on June 1, 2004.


### The 2005 Federal Habeas Corpus Action

On March 22, 2005, the petitioner made a second petition for writ of habeas corpus in this court.  *Williams v. Rushton, et al.,* C.A. No. 6:05-0915-GRA-WMC.  In this petition, the petitioner, proceeding *pro se*, alleged:

A.      Ineffective Assistance of trial counsel

Facts Pre-Trial
1.      Trial counsel failed to interview witnesses, and failed to investigate exculpatory (third party guilt) prior to trial.
2.      Counsel failed to independently evaluate and challenge Discovery evidence provided pre-trial.

During Trial:
3.      Trial counsel waived a Recusal issue against Petitioner's wishes.
4.      Trial counsel not assert voir dire request, but rather abandoned them.
5.      Trial counsel did not object and seek curative explanation for Court's improper opening explanation on "malice".
6.      Counsel failed to renew his "mistrial Motion," after discovering State's lead investigator discussing the identity of his client pre-trial.

7.     Counsel failed to object to testimony from State witnesses which called into question his client's character outside the scope for which he was being tried, nor did counsel challenge the probative vs prejudicial value of such elicited testimony.

8.     Counsel failed to renew "Motion to Recuse," the Judge after the Judge develops and presents a "plea bargain," (sic) to defense counsel, mid-trial in chambers.

9.     Counsel not argue justification sufficient to warrant granting of Directed Verdict Motion.

10.     Counsel failed to object and request curative instructions from the Court during the State's closing which was a recital of evidence not derive (sic) from testimony or forensics, and amounting to an inflammatory attach on his client's character that was highly prejudicial.

11.     Counsel failed to request lesser included offense charge to the jury when such was warranted by the evidence.

12.     Counsel failed to object to the Judge's "burden shifting," Jury charge concerning "malice aforethought," and failed to request a curative charge within established bounds in language and level of proof necessitated by the due process upon such essential offense element.

B.     "Abuse of Discretion by Trial Judge"

Facts:

1.     Trial Judge erred by not granting change of venue motion.

2.     Trial Judge erred by not granting Recusal Motion on his own violition (sic) within the particular circumstances underlying the motion.

3.     Trial Judge's pre-trial explanation and instruction upon the element of "malice aforethough," (sic) was highly prejudicial and burden shifting, but was given by volitional choice with the design to broaden the basis by which a conviction could be obtained by the State.

4.     Trial Judge erred in failing to grant defenses (sic) motion for mistrial after being informed that the State's lead investigator (Police Officer) discussed the defendant's identity pre-trial, whereas the State's case hinged upon identification by this witness.

C.     "Prejudicial Judicial Violation of Separation of Powers"

Facts:

1.     The Trial Judge offered the defense a "plea bargain" which he as the Judge envisioned, and

established the criteria. The State Solicitor played no part in that plea offer, but rather simply listened as the Judge presented it to defense counsel.

D.    "Petitioner Claims Actual Innocence and will Demonstrate Cause & Prejudice based on the following Facts related to the full & fair adjudication and preservations of grounds for relief.

Facts – Post-Trial:
1.    South Carolina's Post-Conviction Relief Act has "devolved," to a level that cannot withstand Constitutional scrutiny
2.    The mode of Post-Conviction Relief procedure has itself become a minefield of procedural traps for unwary litigants seemingly designed to deprive inmates who challenge their conviction and sentence of full and fair litigation.
3.    State created impediments such as prosecuting inmates for aiding each other to develop, articulate, and submit reasonable challenges to the legality of their incarceration is but one of many examples of unconstitutional State created impediments.

On March 29, 2005, this court recommended that the petition be dismissed, as the petitioner had not obtained the required Pre-Filing Authorization (PFA) from the Fourth Circuit Court of Appeals pursuant to 28 U.S.C. § 2244(b)(3).  The petitioner filed objections to the recommendation on April 18, 2005.  On June 8, 2005, Judge Anderson adopted the recommendation and concluded it could not consider the application since the petitioner had not received PFA from the Fourth Circuit.  No appeal was taken from this order.


**Petition to Fourth Circuit Court of Appeals**
**for Pre-Filing Authorization**

On August 4, 2005, the Fourth Circuit Court of Appeals docketed the petitioner's July 27, 2005, motion under 28 U.S.C. § 2244 for an order authorizing the District Court to consider a second or successive application for relief under 28 U.S.C. § 2254.  The petitioner

had not appealed, timely or otherwise, from the second habeas corpus action. On August 17, 2005, the Fourth Circuit appointed counsel and noted the following issue:

> HABEAS /§2244: Whether §2244 petition after new direct appeal is a "second or successive" petition under §2244(b).

On October 31, 2005, counsel for the petitioner made his brief. The State made a brief of appellee on December /14, 2005. On April 10, 2006, the United States Court of Appeals for the Fourth Circuit entered its order. *In Re: Jackie Williams*, 05-406, 444 F. 3d 233 (4th Cir. April 10, 2006). In pertinent part, the Fourth Circuit held:

> For the reasons set forth above, we dismiss as unnecessary Williams' application for leave to file a second or successive habeas petition. FN* Under *Goddard,* Williams' success on the appeal claim in his initial habeas petition entitles him to file his current petition without first obtaining leave from this court. However, to the extent that Williams files a habeas petition in the district court that includes claims previously denied on the merits, the district court is bound, under *Winestock,* to provide Williams with the option of omitting the repetitive claims or having the entire petition treated as second or successive.
>
> > FN* The State contends that Williams' application should be denied because any habeas petition filed at this point would be barred by the one-year statute of limitations, *see* 28 U.S.C.A. § 2244(d)(1). Having concluded that Williams is not required to seek permission to file a habeas petition in the district court, we think it doubtful that the timeliness of any such petition is properly before us at this time. Additionally, it is preferable for the district court to consider in the first instance the timeliness of a petition, including the question of whether Williams might be entitled to equitable tolling of the statute of limitations. *See United States v. Battles,* 362 F.3d 1195, 1198 (9th Cir. 2004) ("[E]quitable tolling issues are highly fact-dependent, and ... the district court is in a better position to develop the facts and assess their legal significance in the first instance ...." (internal quotation marks omitted)).

*In re Williams*, 444 F.3d 233, 236 -237 (4th Cir. 2006)(emphasis added). No further action was taken on that matter.

*Instant Habeas Corpus Petition*

In his *pro se* petition now before this court, the petitioner make the following allegations as to why he is being held in custody unlawfully:

**Ground One:** The Petitioner's right to due process under the 14th Amendment was violated where the evidence was insufficient to support the conviction.

(a)     The State's case against the Petitioner was entirely circumstantial. The State presented evidence that the Petitioner had recently purchased additional life insurance on the victim and that he had a girlfriend whom he met while on military duty. The State presented testimony from witnesses that they had seen the Petitioner and his wife on the day she was killed and that the vehicle she was driving was seen near the scene of the incident with a vehicle which fit the description of one rented by the Petitioner. The State courts found this evidence was sufficient substantial circumstantial evidence. The Petitioner contends that this decision was an unreasonable application of the facts to the law governing constitutionally sufficient evidence as decided by the United States Supreme Court.

(b)     Williams assert this claim was exhausted in his belated appeal after the conditional grant of federal habeas corpus; *State v. Williams*, 01-MO-072 (S.C.S.Ct. Nov. 26, 2001).

**Ground Two:**   The Petitioner's 6th Amendment right to the effective assistance of counsel was violated where counsel failed to present evidence of third party guilt.

(a)     During trial, there was evidence admitted that the vehicle the victim was driving was seen on a dirt road accompanied by another vehicle near the site where it was later found burned. As well, the State presented evidence that the vehicle was pushed down the embankment where it was later found and it had intentionally set afire. The defense presented an alibi defense and some evidence that the victim may have been seeing a man named Roger Corley.

During PCR, the Petitioner presented evidence that Corley attempted suicide after the incident and counsel did talk to Corley's father about him and the incident. Counsel admitted that he did not interview Corley and did not want to call him as a witness absent knowing what his testimony would be. Counsel opted to argue Corley's potential guilt rather than present evidence of his possible involvement in the crime. The State

court found this to be reasonable trial strategy particularly in light of the standard for admission of evidence of third party guilt.

The Petitioner contends that this was an unreasonable application of the facts to United States Supreme Court precedent on ineffective assistance of counsel and on the standard for presentation of third party guilt evidence.

(b)     Williams asserts this issue was exhausted in the State post-conviction relief proceedings and cites to both the 1997 and 2002 actions.

**Ground Three:** The Petitioner's 6th Amendment right to effective assistance of counsel was violated where counsel failed to object to bad character evidence.

(a)     During trial, the State presented testimony from Katherine Shaw and Loraine Gray that the Petitioner beat the victim on several occasions. Shaw testified that the victim moved out due to the abuse and had to miss work on one occasion after the Petitioner broke her nose. Gray similarly testified and added that the victim even filed charges after one incident. No evidence of such charges was presented. As well, the State introduced a greeting card allegedly containing a veiled threat that the Petitioner sent to the victim. counsel did not object to the testimony of Shaw and Gray, nor did he object to the greeting card as evidence of bad character evidence.

During his PCR actions, the Petitioner raised claims that counsel was ineffective for failing to object to evidence of prior bad acts. Counsel indicated that he did not object to the testimony since it was an alibi defense that was presented. Although counsel did object to admission of the greeting card, the objection was based on a lack of foundation for its admission. The State court accepted counsel's explanation as legitimate trial strategy.

The Petitioner contends that the State court disposition of the claim was an unreasonable application of the facts to United States Supreme Court precedent governing ineffective assistance of counsel.

(b)     He contends this claim was exhausted in the State post-conviction relief actions.

**Ground Four:** The Petitioner was denied his 6th Amendment right to the effective assistance of counsel where counsel failed to present favorable insurance policy evidence.

(a)     During trial, the State presented evidence that the Petitioner had very recently increased insurance coverage on the victim and that his coverage was much less than hers. According to the insurance company representative, the Petitioner was anxious to get the coverage started and, very soon after the death of his wife, called to verify the increased coverage.

During his PCR, the Petitioner testified that counsel should have presented evidence that he ha an equivalent amount of insurance coverage. This indicated that his military unit commander could have testified that the amount of coverage was not excessive and that the Petitioner had other coverage as well. Counsel testified that the Petitioner had shown him some insurance documents but that he did not feel they were relevant since an alibi defense was presented.

The Petitioner contends that the State court disposition of this claim was an unreasonable application of the facts to United States Supreme Court precedent governing ineffective assistance of counsel.

(b)     He claims this was exhausted in the second PCR action, claiming that the factual predicate was not known until that time.

**Ground Five:** The Petitioner was denied his 5th Amendment right to effective assistance of counsel based on counsel's mishandling of expert witness evidence regarding the accident and fire.

(a)     During trial, the State presented evidence from Greg Bailey that the vehicle which the victim was driving was pushed sideways down the embankment and that accelerant was introduced through the side of the vehicle. Bailey was not established as an expert in accident reconstruction nor arson, although he was an emergency medical technician and chief of a local fire department. The State's arson investigator and accident reconstructionist presented much less opinion on how an accelerant was administered and had opinions that contradicted those of Bailey.

During his PCR, the Petitioner alleged counsel should have investigated the conclusions of the State's experts and those of Bailey, and presented an independent accident reconstructionist. Counsel indicated that, based on the alibi defense, it was not important or damaging testimony. The State court found this to be reasonable trial strategy.

16

The Petitioner contends that the State court disposition of this claim is an unreasonable application of the facts to the controlling United States Supreme Court precedent on ineffective assistance of counsel.

(b)     He asserts that the issue was exhausted in the State post-conviction relief actions.

**Ground Six:** The Petitioner was denied his 6th Amendment right to the effective assistance of counsel where counsel did not pursue the motion for recusal of the trial judge.

(a)     Prior to trial, it was revealed that the trial judge had presided over a previous criminal trial involving the Petitioner where the Petitioner was found not guilty. Counsel motioned the judge to recuse himself on this basis but later rescinded his motion. During trial, after the State rested, the trial judge called both counsel and the solicitor into chambers and orchestrated a plea agreement.  The Petitioner refused this offer. During the PCR hearing, counsel testified that the judge became involved with the plea bargain out of concern that the Petitioner was going to be found guilty. The Petitioner claimed that the judge's actions and prior dealings with him from another criminal case made him impartial and that counsel should have requested the judge recuse himself.

The PCR court found that the State offered the Petitioner a plea during trial but that he rejected it. The Petitioner contends that the State court finding of fact was clearly erroneous in light of the record. The Petitioner further contends that the State court disposition of the issue was an unreasonable application of United States Supreme Court precedent governing ineffective assistance of counsel.

(b)     He asserts this claim was raised and exhausted in his State post-conviction relief actions.

**Ground Seven:**  The Petitioner was denied his 6th Amendment right to the effective assistance of counsel where counsel failed to object to the trial court's malice instruction.

(a)     During its charge to the jury, the trial judge instructed jurors on the definition of murder and included the definition of malice. The judge explained that malice my be express or implied and that malice may be implied from the general nature of the act where it is exhibited a wicked, low, depraved or malignant spirit. This definition was confusing to the jury and lowered the State's burden of proof by use of the mandatory

term "imply." Counsel did not object to the instruction nor request any clarifying charge.

The Petitioner raised during the hearing that counsel was ineffective for not objecting to the malice instruction. The PCR court, in its order of dismissal, included a summary treatment of any matter raised during the hearing. According to the PCR court in its order, his allegation is refuted by the record and no deficiency on the part of counsel has been proved. The Petitioner contends that the State court resolution of this issue was an unreasonable application of the facts to Untied States Supreme Court precedent dealing with burden shifting jury instructions and ineffective assistance of counsel.

(b)     The Petitioner asserts that this issue was exhausted in the State post-conviction relief actions.

**Ground Eight:**  The Petitioner was denied his 6th Amendment right to effective assistance of counsel where counsel did not discuss with him the availability of a lesser-included offense and where counsel refused the trial court's offer of a lesser-included offense instruction [of voluntary manslaughter].

(a)     During trial, the trial court asked counsel whether he had discussed with the Petitioner the lesser-included offense of voluntary manslaughter. The trial court asked the Petitioner whether he wanted submission of the lesser-included offense of voluntary manslaughter. Based on counsel's advice, he refused the court's offer.

The Petitioner raised during the PCR actions that counsel was ineffective for failing to request the lesser-included offense of voluntary manslaughter when offered by the trial court. The Petitioner testified that he did not understand the ramifications of a lesser-included offense and that counsel never explained to him what voluntary manslaughter entailed. Counsel testified that he did not request such an instruction because it was inconsistent with the alibi defense raised. The PCR court found this was reasonable trial strategy.

The Petitioner contends that, under the facts and circumstances of the case, counsel's failure to request the voluntary manslaughter instruction when offered by the trial court was ineffective representation. The Petitioner further contends that the State court disposition of this claim was an unreasonable application of United States Supreme Court precedent on ineffective assistance of counsel.

(b)     The Petitioner claims this issue was exhausted in the State PCR proceedings.

**Ground Nine:**  The Petitioner was denied due process where the trial court allowed photographic evidence of a spot in the road alleged to have been gasoline where no foundation existed for its admission.

(a)     During trial, Manly Hook testified that he saw a vehicle resembling the victim's stopped on a dirt road with the hood up accompanied by another vehicle and that there was a smell of gasoline. Upon being shown photographs of spots in the dirt road, he identified them a spots he saw where the vehicles were. The photographs were admitted into evidence over objection of counsel. Lyle Stone, who was with Manly Hook on the night in question, could not identify the spots as those he saw at the scene.

Admission of the photographs was erroneous as there was no foundation for their admission. The admission of the photographs, combined with evidence that accelerants were used to burn the vehicle that the victim was driving, rendered the Petitioner's trial a fundamental denial of due process.

(b)     The Petitioner contends this issue was fully exhausted, having been raised in the Petitioner's belated appeal, Brief of Appellant, and being otherwise unavailable for relief in the State court at this time.

**Ground Ten:**  The trial court erred in refusing to grant a mistrial after an investigator discussed the identification of the Petitioner with witnesses during a break in the trial.

(a)     During trial, it was discovered that an investigator in the case discussed the identity of the Petitioner as the individual he saw on the night of the incident stopped on the side of a dirt road with the vehicle the victim was driving which he later saw burning in a ravine. The trial court made a factual record of the incident and denied counsel's mistrial motion.

The Petitioner contends that, in light of the importance of identification in the case, the trial court's denial of the mistrial motion resulted in a denial of due process.

(b)     This issue was not raised in the direct appeal or State PCR actions. He asserts no current remedies are available.

19

**Ground Eleven:** The Petitioner was denied his 6th Amendment right to effective assistance of counsel where counsel waived his motion for a change of venue based on pre-trial publicity.

(a)     Prior to trial, counsel motioned the trial court for a change of venue based on adverse publicity. Counsel presented local newspaper articles discussing insurance policies as the motive for the crime and that the Petitioner had been acquitted in a trial several years earlier for stabbing his wife's sister. The court offered to engage in voir dire of jurors and counsel withdrew his motion.

The Petitioner raised this issue in his PCR alleging counsel was ineffective for withdrawing his motion and that he was denied a fair trial due to pre-trial publicity. The PCR court did not specifically rule on this issue but made a summary dismissal. However, the record in this case demonstrates that counsel was ineffective for abandoning the motion for change of venue. The Petitioner alleges that the State court disposition of this claim is an unreasonable application of the facts of the case to United States Supreme Court law governing the right to a fair trial by an impartial jury and ineffective assistance of counsel.

(b)     The Petitioner asserts this issue was raised in the State PCR Application.

**Ground Twelve:** The Petitioner was denied his 6th Amendment right to counsel where counsel actively engaged in a conflict of interest.

(a)     Prior to trial, counsel had discussions with the trial judge concerning a plea of guilty. Counsel informed the Petitioner that the trial judge would take a plea of guilty contingent upon the Petitioner giving a statement of the offense and an implication of the party who assisted him with the crime. Counsel urged the Petitioner to cooperate. According to counsel during the PCR hearing, a plea offer was made by the judge after the State rested its case. As part of this agreement, the Petitioner would have been required to disclose the identity of the party who assisted him in the crime. Counsel presented the offer to the Petitioner who refused it.

The Petitioner contends that counsel's collaboration with the trial judge caused him to become embroiled in a conflict of interest. It was the trial judge's insistence that the Petitioner disclose the involvement of a third party in the crime that caused counsel divided loyalties and created an adverse effect on his representation of the Petitioner.

(b)     This issue was not raised at trial, on appeal or in a state PCR action. The Petitioner contends it is timely. He asserts the Petitioner's conviction became final on February 8, 1996 as no direct appeal was taken. However, the Petitioner contends he is entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) for all time his State PCR actions were pending. The Petitioner also contends that he is entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) for any time he had pending petitioners for writ of habeas corpus in the United States District Court or Court of Appeals. Finally, the Petitioner contends that he is entitled to equitable tolling of any other time which counts toward his limitation period in this action.

On June 8, 2009, the respondent filed a motion for summary judgment. By order filed June 9, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  After being granted three extensions of time, the petitioner filed his opposition to the motion for summary judgment on October 15, 2009.

**APPLICABLE LAW**

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Title 28, United States Code, Section 2244(d) provides:

(1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000), the Fourth Circuit Court of Appeals described the analysis of a claim of equitable tolling as follows:

> "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999). The doctrine has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of

wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir.1996) (citation omitted). But any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Id.* at 330. The court went on to find:

Harris argues that equitable considerations justify tolling in his case because the missed deadline was the result of an innocent misreading of the statutory provision by his counsel. While we agree that the mistake by Harris' counsel appears to have been innocent, we cannot say that the lawyer's mistake in interpreting a statutory provision constitutes that "extraordinary circumstance" external to Harris that would justify equitable tolling. *See Taliani*, 189 F.3d at 598 (holding that a lawyer's miscalculation of a limitations period is not a valid basis for equitable tolling); *see also Sandvik*, 177 F.3d at 1272 (refusing to toll the limitations period where the prisoner's delay was assertedly the result of a lawyer's decision to mail the petition by ordinary mail rather than to use some form of expedited delivery); *Fisher*, 174 F.3d at 714-15 (refusing to toll limitation where access to legal materials that would have given notice of the limitations period was delayed); *Miller v. Marr*, 141 F.3d at 978 (same); *Gilbert v. Secretary of Health and Human Services*, 51 F.3d 254, 257 (Fed. Cir.1995) (holding that a lawyer's mistake is not a valid basis for equitable tolling); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (refusing to apply equitable tolling where the delay in filing was the result of a plaintiff's unfamiliarity with the legal process or his lack of legal representation).

*Id.* at 330-31.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990)). In *Pace*, the United States Supreme Court determined that even if the petitioner could show that some extraordinary circumstance stood in his way, the petitioner was not entitled to relief because he did not establish the requisite diligence. *Id.*

## ANALYSIS

The respondent argues that the petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). This court agrees. The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

As noted above, the Fourth Circuit Court of Appeals stated as follows when it considered, and subsequently found unnecessary, the petitioner's application for authorization to file a second or successive habeas petition:

> The State contends that Williams' application should be denied because any habeas petition filed at this point would be barred by the one-year statute of limitations, *see* 28 U.S.C.A. § 2244(d)(1). Having concluded that Williams is not required to seek permission to file a habeas petition in the district court, we think it doubtful that the timeliness of any such petition is properly before us at this time. Additionally, it is preferable for the district court to consider in the first instance the timeliness of a petition, including the question of whether Williams might be entitled to equitable tolling of the statute of limitations. *See United States v. Battles,* 362 F.3d 1195, 1198 (9th Cir. 2004) ("[E]quitable tolling issues are highly fact-dependent, and ... the district court is in a better position to develop the facts and assess their legal significance in the first instance ...." (internal quotation marks omitted)).

*In re Williams*, 444 F.3d 233, 237 (4th Cir. 2006).

The instant petition was received by the Allendale Correctional Institution Postal Center on September 30, 2008, the same date it was signed (docket no. 1-2). The petition was filed on October 3, 2008. As the petitioner is a prisoner, he should have the benefit of the holding in *Houston v. Lack*, 487 U.S. 266, 270-71 (1988), which held that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the District Court. Accordingly, the petition was filed on September 30, 2008.

The petitioner contends that his petition is timely because his conviction became final on February 8, 1996, he was entitled to statutory tolling the entire period of time his state actions and federal habeas corpus matters were pending, and he was entitled to equitable tolling "of any other time which counts toward his limitation period in this action" (petition at 14, § 18).

Assuming for purposes of this motion that the time for filing the federal habeas corpus petition began when the South Carolina Supreme Court denied certiorari on consideration of the belated direct appeal issue on November 26, 2001, after initial federal habeas corpus limited relief was granted, the matter became final on February 24, 2002 (90 days after denial to allow certiorari to the United States Supreme Court). One hundred fifty-five (155) days later, the petitioner made his second application for PCR on July 29, 2002. Statutory tolling ceased when certiorari was denied and the remittitur was entered on June 1, 2004. Two hundred ninety (290) days after June 1, 2004, the petitioner dated and made his aborted second federal habeas petition on March 18, 2005. At that time, the statutory period had been exhausted because 445 days of non-tolled time had run since the denial and finality of the certiorari proceedings involving his direct appeal issues. Therefore, the time for filing under this liberal interpretation had already run before the second federal habeas petition was filed in 2005. That petition was dismissed on June 9, 2005.

The petitioner filed his application for authorization to file a second or successive federal habeas petition on July 27, 2005, and the Fourth Circuit Court of Appeals

dismissed the application as unnecessary on April 10, 2006. The instant petition followed on September 30, 2008. Giving the petitioner every possible benefit of the doubt and assuming that the one-year statute of limitations began on the day the Fourth Circuit Court of Appeals ruled, over two years and five months (903 days) of non-tolled time passed between April 10, 2006, and the filing of the present petition on September 30, 2008. The petitioner has failed to show that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way from timely filing the petition.[1] Clearly, under any possible theory the petitioner could have for tolling, the petition was not timely filed, and it is barred by Section 2244(d)(1).

## CONCLUSION AND RECOMMENDATION

Being "mindful that Congress enacted § 2244(d) 'with the ... purpose of curbing the abuse of the statutory writ of habeas corpus,'" *Allen v. Mitchell*, 276 F.3d 183, 186 (4th Cir. 2001) (quoting *Crawley v. Catoe*, 257 F.3d 395, 400 (4th Cir. 2001)), this court concludes that the petition in this case was untimely filed, even when properly tolled.

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 39) be granted. *See Rouse v. Lee*, 339 F.3d 238, 257 (4th Cir. 2003), *cert. denied*, 541 U.S. 905 (2004) (affirming dismissal of petition filed one day late).

February 4, 2010
Greenville, South Carolina

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

---

[1]The petitioner did not address the timeliness issue in his opposition to the motion for summary judgment.

26